Good morning, your honors. May it please the court, Robert Hill for Appellant Kiran Patel. I'm joined by Co-Counsel Alan Eisner, who's at council table. With the court's permission, I'd like to start with the erroneous admission of Mr. Patel's coerced statements to law enforcement and begin with the government's claim that Mr. Patel's barred from even having that claim occurred in this court. They characterize the claim as moot because Mr. Patel chose not to take the stand at his trial. That's incorrect. The court's Chishchilly case that we cite in our brief 1994 case specifically carves out an involuntary confession from the general rule that the Supreme Court created in Luce that an untestifying defendant cannot be heard to complain about the erroneous admission of evidence. That's so because an involuntary confession, the admission of it is an error that reaches the constitutional dimension. Excuse me. Can you tell me how Mr. Patel was injured? Because he doesn't claim that he was discouraged from testifying, as was the case in some of the other cases. So how was he injured by the denial of the motion to suppress? Well, Your Honor, he was effectively kept off the stand by the knowledge that the... He doesn't make that allegation. I didn't see that in his briefs or anywhere in the record. Well, the government stated that they would use the statement for impeachment purposes. The district court approved that use. Mr. Patel was facing a trial where he had the knowledge that the inculpatory statements he made would be brought forth. Of course, it's not going to be in the trial record. And we are here on direct appeal that he was prevented from taking the stand. He doesn't allege that he would have testified, but for the denial of the suppression motion. Your Honor, I don't think he could properly on direct appeal because that evidence is not in the record. But did he have to put forward some kind of proffer about what he would have done? I don't think so, Your Honor. This is a situation where a defendant makes inculpatory statements and then knows they're going to be used to impeach him. If you look at the context of what he was discussing in the interview, he was essentially offering an exculpatory version of events. He was explaining his subjective mental state in a way that the agent interrogating him clearly regarded as false. I'm concerned because Lou says we can't assume that the adverse ruling motivated the defendant to testify. So we can't assume that Patel was discouraged from testifying. So what's the basis for your argument that he was discouraged from testifying other than an assumption? Well, I think it's the context of the interview, for one, that he was offering an exculpatory version of events in the interview before he was told that that was a lie and would negatively impact his chances of getting bond if he didn't quote unquote cooperate or speak truthfully to the officers. I also think you can look at the file record itself, his counsel's arguments for why he's not guilty. The defense centered around the lack of evidence for a substantial step and essentially on Mr. Patel's subjective belief about the undercover agent's age and what the nature of the meeting was going to be. He was trying to raise reasonable doubt as to what Mr. Patel actually thought he was going to do when he arrived. But what was his thinking then that this was just somebody who was playing to be underage and in fact, they were over 18? I think that was the argument at trial that that certainly can be gleaned from the cross that he was uncertain about the age of the agent and also uncertain about what would actually occur when he met the person, whoever they turned out to be. And there was the circumstantial evidence about not bringing some of the items that were discussed, not bringing condoms, not bringing the Victoria's Secret, not booking the hotel. So, yes, I think uncertainty about his subjective belief. And that would have gone to the substantial step is what was he actually intending to do? So you're now switching gears into the argument that there wasn't substantial evidence to support the verdict, but all of those arguments were made to the jury and they're entitled to reject them. They had other evidence as well and were viewing the evidence in the light most favorable for the government. So the phone calls, the emails, his traveling from Tucson to Sierra Vista, walking directly towards the agent, all of those things seem to establish a substantial step. It's a deferential standard on direct appeal, of course. And I did get drawn into that line of argument. I'm happy to go back to the involuntary statement because I think on de novo review, the court should find that it was. So your position on that, as I understand it, is if it's involuntary, that's a constitutional violation. A criminal defendant does not have to put forward anything else. It's just sort of inherent that we can treat that as something that would have affected his trial choices, including whether to testify. Well, he has a right to raise it on direct appeal. I think the cases support that. And just logically, I don't know how he could support that allegation other than supplementing the record with which would be more appropriate, perhaps in a habeas. What's the remedy? I think what you're suggesting is this is structural error. If it's an involuntary statement in violation of this due process rights, it's a structural error and we have to reverse. But there are other constitutional violations, say violations of the Fourth Amendment, where there's a remedy. And if the evidence isn't admitted, there's really nothing left. There's no claim. So here, what's the remedy? Is your suggestion that the remedy is if the court were to conclude that that statement is involuntary, then it's just structural error and we reverse? The remedy is a new trial. I agree with that. I think I understand why it's it's good to distinguish those other situations, the Fourth Amendment or perhaps Miranda, which is, let's say, a quasi constitutional right, not really a constitutional right. But the Fourth Amendment clearly is a constitutional right. When the government doesn't introduce the evidence of trial that was the fruit of the illegal search, the defendant has essentially already had his remedy. All he could have had was the exclusionary rule if the ruling had gone the correct way, his way in the trial court. The result is the evidence doesn't get introduced against him. That's not the case in this type of situation where it's a double whammy, so to speak. He's subject to the coercive interrogation, which is itself a violation, and he's effectively denied the right to testify, which is the second violation. Well, so that requires us to assume that he intended to testify, which Lou said we couldn't do. And in what case supports your claim that we have to assume he would have testified? I mean, I have to disagree, though. Luce and Shisholi don't talk about mootness. They just say whether an error is preserved for appeal. Contrary to Luce, which said it wasn't preserved for appeal, Shisholi said it was. But I don't see either of them talking about mootness. Well, if it's preserved for appeal, but there's no remedy, then it's a hollow guarantee. And if it's ripe on direct appeal, which we believe it is, there should be some remedy available to him. I think the obvious one isn't. And Shisholi, he argued that he would have put on an insanity defense, but for the denial. There wasn't any such allegation here. Right. Mr. Patel would have supplemented the defense. He was already making a trial. We're not asserting he had some separate affirmative defense that isn't apparent on the face of the record. Perhaps in a forum where he was permitted to supplement the record, submit his own declaration, submit a declaration of his trial counsel, there might be additional evidence. But that would be a habeas petition. And I don't think he's required to file habeas to bring this claim before the court. But does he have to give some greater granularity to this, at least in the district court, to say, OK, if this is kept out, if this were disallowed, this is what I would do? Because we're kind of talking in generalities here about, well, if this statement is or is not kept out, I might have done this or I might have done that. It would maybe affect the trial somehow. Those are kind of broad statements. But we don't have anything more specific, like I would have put on this insanity defense as we had in Shisholi. I don't think so, Your Honor. If that were the requirement, that would essentially say a defendant who's on the losing end of pretrial ruling is also, in addition to preserving his objection for appeal, which he did, that's our position, he also has to reveal his trial strategy to the district court and to opposing counsel prior to trial, explain his potential defenses that he's now effectively being denied from actually presenting to the jury in order to, I'm not sure, file a motion to reconsider. I don't think there's a requirement that he put that in his moving papers to try to suppress the confession because there the issue is just the voluntariness of the confession. I don't think there's, I'm not aware of a requirement that he has to say how he would use the information that he believes. Well, short of a proffer, suppose he's not required to make a proffer of what he would testify to him if he testified to trial. What about just the simple argument or statement that this is preventing me from testifying, this ruling prevents me from testifying? Because that's nowhere in the briefs or in the district court record that I can see. He never made that argument or suggested that, but for the district court's ruling, that his statements would be admissible if he testified. He would have testified. He just never makes that statement. And that doesn't seem like that's revealing any sort of strategy or confidential information. He'd just say that. No, I agree. If it's really as pro forma as just saying he would have testified, but I think that's apparent on the entire context of the arguments in the trial record, but I'm happy to say it right now. Well, you can't say that. Will you counsel at trial? And what were other strategy considerations considering his prior arrest in California and another decoy situation? I mean, there may have been a multitude of reasons why Mr. Patel chose not to testify. That had nothing to do with the statements to the agents. And so we would just have to make assumptions that are not based on the record to agree with what you just said. I don't think that's right. I think it's apparent in the full context of the record. His arguments, his trial counsel was making to the jury, including in closing argument and all the cross-examination of the government's witnesses. It was all going to the same thrust, which was the lack of subjective intent that he was actually going to meet a minor and that some sort of unlawful activity would occur when they did eventually meet. You combine that with the arguments in his moving papers and the context of what he was saying to the agent in the interview before he's told he needs to be truthful. They're all pointing in the same direction. We, I can see that we don't have a declaration from trial counsel saying that would have been the trial's strategy. Again, I don't think that's appropriate in this forum. I think that that would be a habeas argument. And I think it's, if it's justiciable on direct appeal, there should be an ability to raise it just based on the record below. Did you want to preserve any time for rebuttal? I did. I wanted to preserve two minutes if possible. Okay, well, you have three minutes. Thank you, Your Honor. I'll briefly move to a couple of the other issues. One of them was the statement about Mr. Patel had already started to meet some of the elements of the crime prior to his arrest. It's subject to clear error because it wasn't preserved below. We also have argued that it's IAC and that the IAC is sufficiently clear on the record that it should be handled on direct appeal. If you look at the conversation that happens at sidebar between counsel and the court outside the presence of the jury, the court is really sympathetic to the objection. The court is inviting defense counsel to make the objection at the time that it comes up and to seek an appropriate remedy. It's unclear why counsel didn't do that. The exchange is very strange. He raises or starts to raise the objection, and then the court says, do we really have to handle this now or can we handle it later? And he sort of accedes to that and says, we can handle it later. But by that point, it's too late. And I take the government's point that at that point, well, I see two minutes are up. So I'll reserve the rest of the two minutes. That's okay. You can finish that sentence. At that point, I think the government has a point that it might be valid trial strategy not to re-raise it and bring it up again after a break when the jury may have forgotten it. But that's not the point. It was timely at the time that he initially raised it. He should have pressed the objection. I think he would have been entitled to have that objection sustained because that testimony was essentially an expert legal opinion that the. Well, it seems, you know, the suggestion that there could be different strategies involved and motivations by counsel undercuts your claim that the record is sufficiently developed for us to consider an ineffective assistance of counsel claim on direct appeal. I think only if the court doesn't disaggregate the two times that it's sufficiently clear that he was ineffective when the statement was made and he started to object and then abandoned it for reasons that there are no valid strategic considerations that would support. It's ambiguous why he didn't seek a curative instruction after the fact, like a jury instruction or a motion to strike. Perhaps he had a reason to do that, but there's no valid reason for not pressing the objection at the time he started to make it. So assuming we accept that, there was no argument on prejudice. I think the only thing the brief said was the prejudice is self-evident. So how would we get to the second strickling prong without any argument in your briefing on prejudice? I think it is. It's as prejudicial. Perhaps it's the next most prejudicial thing to saying at that point, I formed the opinion that the defendant had was guilty beyond a reasonable doubt. So you're suggesting you don't have to make those arguments. We just go there. Well, I'm suggesting we did, but that's our argument is we laid out the prejudice, which is it's invading the province of the jury. It's instructing them to find him guilty. And that is prejudicial by definition because he's entitled to a trial when the jury makes that determination. So we've taken you to the end of your time, but I will give you a few minutes for everybody. Thank you, Your Honor. May it please the court. I'm Chris Cavanius from the U.S. Attorney's Office for the District of Arizona. The government respectfully asks this court to affirm the conviction. I'd like to address efficiency first. I think the defense did make the argument here today that there's insufficient evidence of elements three and four. There is overwhelming. We would submit evidence of three and four. Three being, is there enough evidence for the jury to conclude that the defendant believed that he was dealing with somebody who was under 18? And in the element four, whether or not he took a substantial step, there is sufficient evidence that a jury could conclude he knew or he believed this person was under 18. She says she's 14. I'm saying she, Katie, because it's about what the defendant believes. He asked her many questions to ensure she's alone. She says she's in ninth grade. When she says she's 14, she asks, is that a problem? The defendant says no. He asks her out on a date, gets into the sexual experience, which I'm not going to repeat today. It's all in the brief. And he asked her things that a jury could conclude you're not going to ask somebody if you think that this is an adult woman, i.e. Do you get your period regularly? Are you still a virgin? Do you wear a bra? Are you still growing? And he's worried, worried about getting discovered. And that's evident, too, also with the court listens to the recordings. He's asking her, well, in the texts, is she using her phone or her mom's phone? He asks if her mom's going to find out, asks her to delete the phone number, delete the chats, don't put him on speakerphone. And when he turns it to the hotel room, I'm not going to get in trouble, am I? So being afraid of being caught is another reason why a court could find or a jury could find element three, that he is believing he's dealing with somebody who's under 18. Element four, substantial step was mentioned. Here we have overwhelming evidence of substantial step, particularly in light of McCarran and Getz, this court's cases. There's a standard for substantial step that both the government and the defense in the reply brief cite. It's from McCarran. If you initiate a conversation with a minor, if you describe the sexual acts you'd like to perform on the minor, and you also propose a rendezvous to perform those acts. All three of those are met here. He initiated conversation with the minor, that exhibit 19 text chat or internet chat is very clear on that. He describes the sexual acts he'd like to perform. Again, I'm not going to repeat them all, but he does talk about it, giving her oral sex for an hour, SCR 53. And also he proposes the rendezvous. He proposes the car or apartment or the hotel. At that point, he's met the substantial step requirement under McCarran. That's enough. But we also have more. He proposes to get her the nightie. He actually, when he's calling her, says he's leaving from the mall. He travels and he shows up there to meet her. And one thing I realized I forgot to put in my brief is that he had a stack of hotel keys in his pocket when he was arrested. And that's at 2 ER 201. So although he argued to the jury that this was some kind of a fantasy in a game and all that, the jury was entitled to reject that. And of course, as the court noted, conflicts are resolved in the favor of the jury's verdict. Did he work at a hotel? I'm trying to remember what was in his statement versus what the I think in the chat he mentioned that he was going to be buying a hotel. And so the jury could have credited that being part of that. But what I wanted to mention is that also suggests that it's not a jury could find again that it's not simply a fantasy, as he was arguing. And of course, at that point, the substantial step requirement was met. The fact that he actually traveled to meet her and he was arrested in that Arby's is just gravy sort of on top of substantial step. Frankly, it's one more. As far as the statement, I think the court, based on its questions, understands that there's a difference. And as Judge Okuda noted in Shishilly, the defendant argued that he was precluded from presenting an insanity defense. And here, the defendant said he wasn't going to testify. And that's at your two ninety three. And so it's on the record because the government actually asked the court to put on the record and ask the defendant about understanding has the right to testify. And so he chose not to. And there's nothing in there that would suggest that it was the decision not to testify was tied to the fact that the government could have if it wanted to impeach him on that statement. The state was actually admissible in the case in chief. The government chose not to use it. And as Judge Okuda noted, you know, there are multiple reasons why someone or multiple reasons why somebody might choose not to testify. And, you know, the defense today also says that statement is somewhat innocuous in terms of, you know, it's not super incriminating on the defendant. If he had taken the stand, what would have been a lot more incriminating was to walk him through those Internet chats he was having with that criminal defendant's burden in this kind of situation. Like more. Well, what do you have to cut? He could have said he would have testified. I think you agree that would have been sufficient. You know, I don't know if that would be, honestly, I think that it would bring it more into the context of some of those cases. If you ship showing my age, if you key site, she's really there's there are cases that talk about when somebody is alleging that the decision not to testify is tied to that statement. We don't have anything like that here. But also some of the cases require like a proffer, like I think your court, your honor asked and more, because the big thing here, ultimately, though, is the court really doesn't have to go here because there is no prejudice. The air is harmless. And if we can, if we look at the entire record here, if a statement is not admitted, then the defendant cannot show he was prejudiced at trial. The jury never heard about it. The jury never heard he made a statement. The jury, you know, so that's the part where I think Judge Akuda hit the nail on the head is like there has to be a remedy. And I think Judge Beatty noted that as well. And so without that, I mean, I looked at some of the cases and I didn't see anything where if you find that a defendant has the right to still bring a challenge to the voluntariness of a confession that was never admitted, that if you were to find it's involuntary, he's entitled to a new trial. I just think that's a bridge too far. I think loose doesn't stand for that proposition. Even if you accept the nugget that he might be able to raise this on appeal, we still have the fact that it did not tangibly hurt him. If someone were to agree with you that the statements were not involuntary, just on the merits, they were not. What is the significance of this first part of the arguments? It doesn't seem to me jurisdictional in any way. I mean, again, I just think that Shoshillia is a very specific, unique circumstance that just doesn't exist here. And so what you have is if you're disinclined to find it sort of moot at the front end, you find it's harmless at the back end. And that's how I would recommend that. Right, but if one were to, just to put a finer point on it though, if one were to conclude this, if we were looking at it and said that the statement is not involuntary, it's a voluntary statement, there's no underlying constitutional problem, is there any reason why one couldn't reach that even if there's some question about, under Shoshillia, as to whether this is barred or not? I don't see this as being an Article III mootness problem. It's more a question of whether it's procedurally barred. You know, I wonder if it's a matter of just the vernacular. Like I did cite that Sixth Circuit case that found a statement moot because it was not admitted. There's also an Arizona Supreme Court case too that I would like to cite in a 28-day argument called Hoskins. And they get into that same issue about whether or not you can look at whether or not a statement that was never admitted that's alleged to be involuntary. And what they found themselves dealing with there is just, we're just unable to find prejudice in that circumstance. And I think that's what we have here. Excuse me, I'm concerned about, as is Judge Brass, about whether this is moot, which is an Article III issue we have to address, or merely we say any error was harmless. And we have a couple of cases that you cite, Arias-Villanueva and that relies on U.S. v. King, which says that the denial of a motion to suppress evidence in Arias-Villanueva was even the product of a constitutional error for the amendment error, was moot because the government didn't introduce the evidence at trial. So I'm concerned about whether this is moot, as you argued in your briefs, or merely a harmless error, as you're arguing now. Well, actually, we argued in our brief it's harmless too. I did mention that at the very end of that argument, that it's harmless for the same reason. So I do believe that that argument is preserved in the brief. But I guess I would say if this court does address it, it's still voluntary. I want to make sure I say that. The district court correctly found that it was voluntary. And that's where you get to the district court's determination. And I didn't quote this in the brief, but it is at 2 ER 295, he doesn't seem to have his will overborne. The references to being released were more tangential to the overall request to be honest. I don't see any overt threat or promise that the judge would release him if he was honest or admitted he intended to do something. It was more that if you cooperate, the judge takes that into consideration. The government submits that as a reasonable reading of this record, that the totality of circumstances, particularly that video, you'll see the defendant sitting there with his arms crossed for most of the time. He's sitting at a table. Agent Giddes is right next to him at the table across from him as the other agent. It's all very conversational and non-threatening. Defendant weighs his Miranda rights and alleges that he avows that it's freely and voluntarily being made without threat. He consents to search his cell phone. There's no handcuffs, no deprivation of food or water. He had water. And he has criminal experience from his time in California, which is also relevant. So, and the agent is telling him over and over, but you absolutely do have a choice about whether you want to talk to us. And it's just so. Wait, could you explain to me why it was in moot under Arias Villanueva? I mean, you're getting into whether there was an error or not. And I'm still concerned about whether the issue is moot because the evidence was never introduced. Well, in Arias Villanueva, it says this issue is moot because the government did not introduce any evidence seized during the search. Now, we were making the analogy that this was similar to when you don't admit something at trial, the defendant cannot show. I guess that it's sort of a live controversy. But again, if the court has difficulty with the idea that there's mootness, I just wanted to mention that it is also harmless on the back end. But it's also voluntary. There can be errors of the constitutional dimension that do not require harmless error analysis, which is why I asked a friend on the other side about structural error, if that's what they're suggesting. And I didn't see, I guess what I understand your argument to be is that this is not one of those circumstances. It is not. And, you know, it's another case I'm going to put on my list, but as this court knows, even an involuntary confession, when it's admitted at trial, can still be harmless. So if an involuntary confession that's actually admitted at trial can be harmless, then if you were to find that a statement that was not admitted at trial was involuntary, that has to be harmless. And that's, I think, Arizona v. Fulminante, but I will cite a letter after argument on that. And that's the harmlessness of the confession. You would distinguish the other case, like Shisheli, by saying there the defendant offered some evidence of prejudice. Well, and also what we have that first getting through the gate here, again, Shisheli just seems so, if you claim that you have been precluded from presenting a defense, you go down this road. Or in those cases where you show that the decision to testify was based on this decision that occurred pretrial as opposed to other reasons, those are in different categories than this case. So I just see this as not Shisheli situation, but even if you were to review it, it is voluntary. And even if you were to find it's involuntary, it's not structural error. It can still be harmless. So to consider the merits of whether the statement was voluntary or involuntary, do we have to assume, as opposed to counsel suggests, that he would have testified? No, no, Your Honor, you do not assume that. And this court should not go down that road. You know, if you wanted to analyze this question, I don't know that this is a good case to analyze it because this is an absolute goose egg when it comes to any allegation that he is decision to testify or not testify, rose or fell in any way based on this prior statement, which again, the defense says is somewhat exculpatory and innocuous versus the fact that he has a prior. The fact that there's really incriminating internet chat with somebody who the jury could reasonably find he believed was under 18. So no, I would encourage this court not to apply sort of an assumption standard. No. If there's no assumption, what is the injury that would make this a live controversy? I don't think there is one, Your Honor. And that's what I think what I would submit. And that's one of the reasons why I made the argument that it's moot because he can't show there's still a reason to get into this. But I am aware of Shashili. And so I see how Shashili made it relevant. But we don't have that here. Well, mootness is a funny word, right? Because in normal parlance, it means it's kind of beside the point. But once you start saying the word moot in a court, all of a sudden we started asking, do we have jurisdiction or not? Do you read these cases when they talk about mootness to be more of saying mootness in a colloquial sense beside the point? Or do we really lack jurisdiction? It seems to me there's a live controversy here. Is it is a criminal prosecution? Well, I think that the court has cases where it refuses to hear something if the evidence is not admitted. Here, the evidence was not admitted. So I do think there is an argument that the issue is moot. But if the court finds that it's not moot and it wants to analyze it, it is voluntary confession. And it was harmless beyond a reasonable doubt. And that overwhelming evidence of guilt really plays in here. That's one of the reasons why I think this court should have a little difficulty in finding that it did not affect the verdict. But of course, it wasn't admitted. So I find myself kind of going around in a circle a little bit. But I'd ask the court to affirm. And then the last thing in the 17 seconds I have left, the defendant argued about the Agent Giddes' statement. I wanted to mention that was he said, quote, I had already said, why did you ask him where he lived was the question. I had already started to meet essentially some of the elements of the crime. And once I get, I see I'm out of time. May I finish my thoughts? Thank you, Your Honor. I had already started to meet essentially some of the elements of the crime. And once I get to the point where I feel that the person I'm talking to is going to be a suspect. So in context, a jury could reasonably conclude this was about him being a suspect. It's in the investigatory phase. The agent never says, hey, all the elements here are met. He never said the defendant was guilty. It could also be interpreted as probable cause. And again, based on all of the evidence, including that the jury is instructed that it has to find all the elements beyond a reasonable doubt. And a jury is presumed to follow those instructions. That error is also not plain or harmless. And there's no ineffectiveness for the reasons that Judge Beatty noted. There's no, the record's not developed. There's no, on the first prong. And also there's no prejudice we can show, even if you get to it, because of the overwhelming evidence of defendant's guilt. Thank you for letting me finish my thought. I appreciate that. Thank you. The government would ask the court to affirm. Thank you. And Mr. Hill. Thank you, Your Honor. Just briefly. The government seems to assume that if Mr. Patel had testified, it would have gone worse for him, even without the confession, because they would have brought in his prior arrest for prostitution in 2006. I don't think so. And I think one way to tell is that the government wasn't prohibited from introducing the confession in their case in chief. There was nothing about the pretrial ruling that prohibited them from doing that. That was their trial strategy decision. And the court has the video. The court has the audio. I think a reasonable litigant could watch that video and say that is going to inspire more sympathy or raise more questions in the jury's mind than the benefit they got from keeping him off the stand by letting him know that they're going to introduce it to impeach him. So it's not clear to me at all that they got more out of keeping him off the stand than they would have gotten by introducing the video to the jury in their case in chief. And otherwise, it's sort of inexplicable that they didn't introduce it, even though they won the pretrial ruling. A couple other brief points. The point that it has to be harmless error because there are other cases in which an involuntary confession is introduced. That depends on the content of the confession. You could imagine an involuntary statement that's either not particularly relevant or it's on side issues. Its introduction would be harmless. There's nothing ipso facto if it's introduced. And if there are cases in which an involuntary confession is introduced and it's held to harmless. Therefore, the admission of an involuntary confession when it's not introduced is always harmless error. I don't think there's a case that says that. And then just briefly, because I know I've already taken up too much of the court's time on the analogies to a Miranda case and to a Fourth Amendment case that the government uses to attempt to distinguish Chiscelli. I would just point the court to the first numbered page in our reply brief where we address those. The Fourth Amendment case, as I said, is not a good analogy because by not introducing the evidence, the defendants already had anything he could have gotten from a correct ruling in the district court, meaning he essentially has the exclusionary rule because the evidence doesn't come in. Miranda is not a constitutional right, as the Supreme Court continues to remind us. It's a prophylactic rule. So it's simply not a proper analogy. And for those reasons, I'd ask the court to reverse. Thank you. Thank you. This case is submitted. And I thank counsel both for your arguments. They were very helpful this morning.
judges: IKUTA, BADE, BRESS